# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Richard Alan Smuda, | Case No. 24-cv-3215 (PJS/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nancy Johnston, Jodi Harpstead, Paul Snell, Breanna Futchko, Becker County, Anoka State Hospital, State of Minnesota, Minnesota Department of Human Services, Minnesota Department of Corrections and Rehabilitation, and Minnesota Sex Offenders Program, | |
| Defendants. | |

This matter is before the Court on Plaintiff Richard Allen Smuda's (1) Amended Complaint (Doc. 5) and (2) Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2.).[1] For the reasons below, the Court recommends dismissing this action in full and denying the IFP Application.

## BACKGROUND

In November 2020, a Minnesota state court in Becker County ordered Mr. Smuda's civil commitment as a sexually dangerous person and a sexual psychopathic personality.

---

[1] Mr. Smuda has submitted several amended complaints. (*See* Docket.) On August 27, 2024, however, the Court ordered that the document at Doc. 5 would serve as this action's operative complaint unless Mr. Smuda moved to amend following the Federal Rules of Civil Procedure and the District's Local Rules. (*See* Doc. 8.) Because Mr. Smuda has not moved to amend since the Court's order, the Amended Complaint at Doc. 5 is the operative complaint.

*See In re Civ. Commitment of Smuda*, No. A21-0610, 2021 WL 5047496, at *1, 4 (Minn. Ct. App. Nov. 1, 2021). Mr. Smuda appealed the commitment decision, but the Minnesota Court of Appeals affirmed it. *Id*. Mr. Smuda is a "client" at the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. (*See* Doc. 5-4 at 1.)

The Court received the Amended Complaint on August 22, 2024. (*See* Doc. 5.) The caption lists seven Defendants, but the document's text includes three additional entities. (*See id.* at 5-6.) The Amended Complaint identifies Nancy Johnston as the MSOP's executive director. (*Id.* at 5.) It identifies Jodi Harpstead as a "Commissioner," which the Court interprets as referring to her role as commissioner of the Minnesota Department of Human Services ("MDHS"). (*Id.* at 6.) "Paul Snell" presumably means Paul Schnell; the Amended Complaint refers to him as the director of the Minnesota Department of Corrections ("MDOC"). (*See id.* at 5.[2]) The Amended Complaint identifies Breanna Futchko as a Becker County employee working in its Human Services department. (*Id.* at 6; Doc. No. 5-1 at 1.) Along with these individuals, Mr. Smuda also purports to sue Becker County, the "Anoka State Hospital" (presumably the Anoka–Metro Regional Treatment Center), the State of Minnesota, MDHS, MDOC, and MSOP. (*See* Doc. 5. at 1, 5-6.)

The Amended Complaint contains at least two key components. First, Mr. Smuda challenges the propriety of his civil commitment. He asserts that he was civilly committed twice in North Dakota, but that authorities discharged him in 2019 after he completed the program. (Doc. 5 at 2.) After his discharge, he moved to Minnesota to live with his mother.

---

[2] Mr. Smuda refers to the MDOC as the "Minnesota Department of Corrections and Rehabilitation," but the department's official name does not include "and Rehabilitation."

(*See id.*) He alleges that a 2019 incident led to his civil commitment in Minnesota, but he claims the commitment process was procedurally flawed, including that he received ineffective assistance from counsel during the proceedings. (*Id.* at 1-3, 14.) Additionally, he argues that his present commitment hinges on his conduct in North Dakota, and he contends that using this prior behavior to justify a new commitment in a different state raises legal issues. (*Id.* at 2, 5.)

In the second part of the Amended Complaint, Mr. Smuda outlines ways in which he believes his treatment at MSOP has been unconstitutional. (*See id.* at 4-5.) He alleges that after he stopped taking his medications, MSOP staff responded with inappropriate uses of force and instances of wrongful confinement. (*Id.* at 4.) He claims that during this time, MSOP authorities left him unattended for several days while he and his surroundings were covered in feces and urine. (*Id.*) Additionally, Mr. Smuda asserts that authorities have confiscated several of his belongings, including a continuous positive airway pressure ("CPAP") machine that he cannot replace until October 2025. (*Id.*)

Mr. Smuda brings claims under the Constitution's Fourth, Sixth, Eighth, and Fourteenth Amendments. (*Id.* at 7-8.) He invokes 42 U.S.C. § 1983 and suggests that he also has causes of action under 42 U.S.C. §§ 1985(3) and 1986, as well as the Americans with Disabilities Act. (*Id.* at 12-13.) For relief, he asks for $20 million in damages, as well as "temporary, preliminary and permanent injunctions enjoining defendants, their officials, employees, co-conspirators, agents, attorneys, and all persons in active concert or participating with anyone of them from enforcing policies, practices or procedures that

violate the Fourth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution." (*Id.* at 16.)

## ANALYSIS

I. **MR. SMUDA'S COMPLAINT FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AND SHOULD BE DISMISSED.**

Rather than pay this action's filing fee, Mr. Smuda filed an IFP Application. The application indicates that, financially, Mr. Smuda would qualify for *in forma pauperis* status. But under the federal statute governing IFP actions, "notwithstanding any filing fee, or any portion thereof, that may have been paid, the court [in an IFP action] shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[] or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

To determine whether a complaint states a claim for which a court can grant relief, a district court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)). While a complaint's factual allegations need not be detailed, they must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (collecting cases). A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court's consideration of whether a pleading states a claim is "context-specific" and requires the court to "draw on its judicial experience and common sense." *Id.*

at 679; *see also, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)) (cleaned up). While courts must liberally construe *pro se* complaints like Mr. Smuda's, such pleadings must still allege enough facts to support the claims asserted. *See, e.g.*, *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741-42 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

Furthermore, under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

**A.     Mr. Smuda's claims against state entities.**

Because the Amended Complaint seeks to sue the State of Minnesota, several state agencies and entities, and various state officials in their official capacities, the Court must address state sovereign immunity under the U.S. Constitution's Eleventh Amendment. Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. Although the Amendment references "another State," it also bars suits against states by their own citizens. *See, e.g.*, *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 499 (2021) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)); *Elder v. Gillespie*, 54 F.4th 1055, 1062 (8th Cir. 2022) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).

Under this immunity, states cannot be sued by their citizens in federal court unless the state has consented to the suit or Congress has abrogated state sovereign immunity.

5

*See, e.g.*, *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (collecting cases)); *Van Wyhe v. Reisch*, 581 F.3d 639, 653 n.4 (8th Cir. 2009) (quoting *Coll. Sav. Bank*, 527 U.S. at 670). The Amended Complaint does not allege that any such consent or abrogation exists here. The Court therefore concludes that it lacks jurisdiction over the Amended Complaint's claims against the State of Minnesota.

This recommendation applies to other defendants as well. For instance, for Eleventh Amendment purposes, courts treat claims against state agencies as claims against the state itself. *See, e.g.*, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (collecting cases). The Court thus recommends dismissing the Amended Complaint to the extent it seeks to sue MDHS, MDOC, and MSOP. Furthermore, the Court understands that MDHS oversees the Anoka–Metro Regional Treatment Center, so the Court also recommends dismissing the Amended Complaint to the extent it purports to sue that entity.

Mr. Smuda also seeks to bring damages claims against each individual Defendant in his or her official capacity. (*See, e.g.*, Doc. 5 at 5.[3]) But three of the individual

---

[3] Mr. Smuda's capacity discussion is confusing. At one point, he explicitly states that he is suing Ms. Johnston and Mr. Schnell in both their individual and official capacities. (Doc. 5 at 5.) Later, he asserts that the Amended Complaint's "sole supplemental state law claim sues Nancy Johnston, Jodi Harpstead, Paul [Schnell], and Breanna Futchko in their personal capacities only." (*Id.* at 7.) But the Amended Complaint's causes-of-action list does not include any state-law claims. (*See id.* at 12-13.)
Eighth Circuit case law establishes that to bring individual-capacity claims against defendants, a plaintiff must specifically indicate this in the pleading. *See, e.g.*, *Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007) (citing cases); *Vogel v. Turner*, No. 11-CV-0446 (PJS/JJG), 2012 WL 5381788, at *2 (D. Minn. Nov. 1, 2012) (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)). In the Court's view, Mr. Smuda definitively expresses an intent to bring individual-capacity claims only against Ms. Johnston and

Defendants here—Ms. Johnston, Ms. Harpstead, and Mr. Schnell—are state employees, and claims against state employees in their official capacities are essentially claims against the state itself. *See, e.g.*, *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." (collecting cases)); *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Court thus recommends dismissing this action without prejudice, for lack of jurisdiction, to the extent it seeks damages from Ms. Johnston, Ms. Harpstead, and Mr. Schnell in their official capacities with the State of Minnesota.

This leaves one set of potential official-capacity claims: specifically, any claims in the Amended Complaint against Ms. Johnston, Ms. Harpstead, and Mr. Schnell seeking prospective injunctive relief rather than damages. Under the doctrine of *Ex parte Young*, federal courts may, in certain circumstances, hear official-capacity claims against state officials when the plaintiff seeks prospective injunctive relief. *See, e.g.*, *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146 (discussing *Ex parte Young*, 209 U.S. 123 (1908)); *Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035, 1037 (8th Cir. 2024) (same). The Amended Complaint requests prospective injunctive relief (*see, e.g.*, Doc. 5 at

---

Mr. Schnell. As for Ms. Harpstead and Ms. Futchko, the Amended Complaint's only reference to suing them in their individual capacities concerns an unspecified state-law claim that does not appear in the Amended Complaint. Given this ambiguity, the Court treats the Amended Complaint as bringing only official-capacity claims against Ms. Harpstead and Ms. Futchko.

7

16), so the Court must consider whether the relevant claims can proceed under *Ex parte Young*.

But these claims do not meet the necessary criteria. The Eighth Circuit has made clear that "[t]he *Ex parte Young* exception only applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014) (quoting *Ex parte Young*, 209 U.S. at 156); *see also, e.g.*, *Minn. RFL Republican Farmer Lab. Caucus*, 108 F.4th at 1037 (citing *281 Care Comm.*). The Amended Complaint does not indicate that Ms. Johnston, Ms. Harpstead, or Mr. Schnell are about to commence any such proceedings. So to the extent the Amended Complaint asserts official-capacity claims against Ms. Johnston, Ms. Harpstead, and Mr. Schnell seeking prospective injunctive relief, the Court recommends dismissing those claims without prejudice for lack of jurisdiction.

In sum, then, the Court recommends dismissing all of the Amended Complaint's official-capacity claims against Ms. Johnston, Ms. Harpstead, and Mr. Schnell—without prejudice, for lack of jurisdiction.

**B.  Mr. Smuda's challenges to his civil commitment.**

The Court next considers the Amended Complaint's allegations regarding Mr. Smuda's civil commitment. As a threshold point, the Amended Complaint is unclear about the specific relief Mr. Smuda seeks. While the Amended Complaint's first paragraph explicitly states that Mr. Smuda does not intend to "seek review of [his] individual state commitment orders or judgment[,]" (Doc. 5 at 1) he also argues that his civil commitment

was improper, and that the procedures used to commit him did not meet constitutional standards (*See, e.g.*, *id.* at 2–4). Additionally, the Amended Complaint requests "permanent injunctions enjoining defendants . . . from enforcing policies, practices, or procedures" that violate the U.S. Constitution, along with "affirmative injunctive relief" to the same effect. (*Id.* at 16.) Given Mr. Smuda's claims about his civil commitment, it logically follows that the part of the injunctive relief he seeks not only affects certain conditions of his MSOP commitment but also challenges the validity of the commitment itself.

The challenge to his commitment cannot proceed here. Mr. Smuda brings this case as a civil action, asserting his constitutional claims under 42 U.S.C. § 1983. This approach is generally appropriate. *See, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." (collecting cases)); *Nelson v. Ellison*, No. 23-CV-2122 (JRT/LIB), 2023 WL 7741273, at *3 (D. Minn. Oct. 27, 2023) (collecting cases), *R. & R. adopted*, 2023 WL 7697051 (D. Minn. Nov. 15, 2023). But plaintiffs cannot use § 1983 to challenge the legality of their confinement if the relevant claims necessarily imply that the confinement is invalid. *See, e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting and discussing *Heck*, 512 U.S. at 487).[4] This principle applies to both claims seeking damages and those seeking injunctive

---

[4] *Heck* addressed unconstitutional conviction and imprisonment, but the Eighth Circuit has extended *Heck* to civil-commitment claims. *See, e.g.*, *Thomas v. Eschen*, 928 F.3d 709, 711 (8th Cir. 2019); *Adams v. Thompson*, No. 22-CV-3047 (WMW/JFD), 2023 WL 4769620,

relief. *See, e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)[5]—no matter the relief sought (damages or equitable relief)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration"); *Adams v. Agniel*, 405 F.3d 643, 644 (8th Cir. 2005) (per curiam) (collecting cases).

The Court therefore recommends dismissing the Amended Complaint—without prejudice, for failure to state a claim—to the extent that it challenges Mr. Smuda's civil commitment.

## C. Mr. Sumda's challenges to the conditions of his confinement.

What remains are Mr. Smuda's claims based on his conditions of confinement at MSOP. The relevant allegations are as follows:

> [I]t seems like the sex offenders program in Moose Lake, is a Prison with Razor Wired Fence, and there is a great deal of Punishment going on here for [example]. Smuda quit taking my medication again and the next thing he knew was the staff called the A-Team and they jumped him and took him to HAS [High Security Administrations area] it is like the hole in Prison. They took him there on several occasions, once he was taking a shower and they came and pepper sprayed him and took him back to HSA. Each time they striped searched him,

---

at *5 (D. Minn. July 5, 2023) (citing *Thomas* and *Heck*), *report and recommendation adopted*, No. 22-CV-3047 (WMW/JFD), 2023 WL 4768139 (D. Minn. July 26, 2023).

[5] The phrase "[a]bsent prior invalidation" is key because the *Heck* rule includes a critical qualifier. An individual can bring § 1983 claims challenging their conviction or confinement if there has been a so-called "favorable termination" of that conviction or sentence. This means the conviction or sentence must have been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. This qualifier does not apply here, however, as there is no indication in the record that Mr. Smuda's current civil commitment or the order underlying it has been "favorably terminated" in any way.

10

> and kept him locked up for two weeks at a time, even one time on the wrong meds. They watched him for a few days with feces and urine all over him, his cloths that they gave him and the floor. They searched Smuda's room and took his [CPAP] Machine, Legal Papers and it all disappeared, somehow they blamed it on him. His Insurance will not give him another one until October of 2025 at that time, it would be three and a half years without one.

(Doc. 5 at 4 (footnote omitted)).

Mr. Sumda's discussion of unconstitutional conditions of confinement pertains only to conditions at MSOP; it does not involve Becker County or Defendant Futchko (in her official capacity with Becker County). Indeed, Mr. Smuda's claims against Becker County appear solely related to his challenge of his civil commitment's propriety. (*See* Doc. 5 at 3.) The Court thus recommends dismissing the Amended Complaint—without prejudice, for failure to state a claim—to the extent it asserts claims against Defendants Futchko and Becker County.

As discussed above, the Amended Complaint asserts individual-capacity claims against only two Defendants: Ms. Johnston and Mr. Schnell. The Court addresses the claims against Mr. Schnell first. None of the quoted allegations involve Mr. Schnell. Indeed, Mr. Smuda's theories of liability concerning Mr. Schnell appear limited to challenges to Mr. Smuda's civil commitment. (*See* Doc. 5 at 5 (stating that "[Schnell] is responsible for the assessment and identification of inmates and juveniles imprisoned by the state for referral to state's attorneys for civil commitment proceedings . . . including the promulgation and enforcement of certain policies, practices and procedures challenged in this action"). The Court therefore recommends dismissing the Amended Complaint's

individual-capacity claims against Mr. Schnell, without prejudice, for failure to state a claim.

As for Ms. Johnston, the allegations quoted above do not specifically refer to her either, so Mr. Smuda's theory of liability here appears to rest on her role as MSOP's executive director. In other words, the Amended Complaint presumes that a court can hold her responsible for the unconstitutional actions of MSOP employees. But to allege a supervisor's liability for her employees' unconstitutional conduct, a plaintiff must allege more than just the defendant's supervisory role. *See, e.g.*, *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) (en banc) (citing earlier panel opinion with approval). A plaintiff must instead allege that the supervisor either "directly participated in the constitutional violation, or that [her] failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (internal citations omitted); *see also, e.g.*, *Cole v. Does*, 571 F. Supp. 3d 1033, 1042 (D. Minn. 2021) (quoting *Parrish*, 594 F.3d at 1001).

To state a supervisor-liability claim under the direct-participation theory, "a plaintiff must [allege] that the supervisor was personally involved in the constitutional violation." *Cole*, 571 F. Supp. 3d at 1042 (collecting cases). The Amended Complaint contains no allegations that support a direct-participation claim against Ms. Johnston.

That leaves the potential for a failure-to-train or failure-to-supervise claim. The elements of such claims are that:

> (1) the supervisor was on "notice of a pattern of unconstitutional acts committed by subordinates;" (2) the supervisor "was deliberately indifferent to or tacitly

authorized" the pattern of unconstitutional acts; (3) the supervisor failed to take "sufficient remedial action" to address the pattern of unconstitutional acts; and (4) the supervisor's failure to remedy the pattern of unconstitutional acts proximately caused the plaintiff's injury.

*Id.* at 1044 (quoting *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019)). The Amended Complaint similarly fails to allege any of these necessary elements. The Court therefore recommends dismissing the Amended Complaint's individual-capacity claims against Ms. Johnston—without prejudice, for failure to state a claim.

Given the Court's recommendation to dismiss Mr. Smuda's Amended Complaint in its entirety, the Court also recommends denying the IFP Application as moot.

## RECOMMENDATION

Based on the above, as well as the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Plaintiff Richard Alan Smuda's Amended Complaint (Doc. 5) be **DISMISSED WITHOUT PREJUDICE**, for lack of jurisdiction, to the extent it brings:

    a. Claims against the "Anoka State Hospital," the State of Minnesota, the Minnesota Department of Human Services, the Minnesota Department of Corrections and Rehabilitation, and the Minnesota Sex Offenders Program; and

    b. Claims against Defendants Nancy Johnston, Jodi Harpstead, and Paul Snell, as sued in their official capacities with the State of Minnesota.

2. The Amended Complaint be **DISMISSED WITHOUT PREJUDICE**, for failure to state a claim, to the extent that it brings:

    a. Claims challenging Mr. Smuda's civil commitment;

    b. Claims against Defendants Breanna Futchko and Becker County;

13

      c.      Claims against Ms. Johnston and Mr. Schnell, in their individual capacities, related to Mr. Smuda's conditions of confinement in the Minnesota Sex Offender Program.

3. Mr. Smuda's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2) be **DENIED** as moot.

Date: October 2, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served with a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).