## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Richard Allen Smuda, | Case No. 24-cv-3215 (PJS/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION AND ORDER** |
| Nancy Johnston (MSOP), State of Minnesota, Minnesota Sex Offender Program, | |
| Defendants. | |

This matter is before the Court on Defendants Nancy Johnston, State of Minnesota, and Minnesota Sex Offender Program's (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint. (Doc. 39.) Also before the Court are Plaintiff Richard Smuda's Motion for Compensatory Relief (Doc. 30); Motion to Keep Monetary, Compensatory, and Punitive Damages Relief (Doc. 35); and Motion for Default Judgment (Doc. 53). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons explained below, the Court recommends that Defendants' Motion to Dismiss (Doc. 39) be denied with respect to Mr. Smuda's claims arising under the Americans with Disabilities Act ("ADA") against Defendants State of Minnesota and Nancy Johnston in her official capacity, but granted in all other respects. The Court also denies without prejudice Mr. Smuda's Motion for Compensatory Relief (Doc. 30) and Motion to Keep Monetary, Compensatory, and Punitive Damages Relief (Doc. 35). Finally, the Court denies Mr. Smuda's Motion for Default Judgment (Doc. 53) with prejudice.

## BACKGROUND

In November 2020, a Minnesota state court ordered Mr. Smuda's civil commitment as a sexually dangerous person and a sexual psychopathic personality. *See In re Civ. Commitment of Smuda*, No. A21-0610, 2021 WL 5047496, at *1, 4 (Minn. Ct. App. Nov. 1, 2021). Mr. Smuda appealed the commitment decision, but the Minnesota Court of Appeals affirmed it. *Id*. Mr. Smuda is a "client" at the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. (*See* Doc. 5-4 at 1.)

The Court received Mr. Smuda's Amended Complaint on August 22, 2024. (*See* Doc. 5.) The Amended Complaint names multiple defendants and contains at least two key components. Mr. Smuda challenges the propriety of his civil commitment. He asserts that he was civilly committed twice in North Dakota, but that authorities discharged him in 2019 after he completed the program. (*Id.* at 2.) After his discharge, Mr. Smuda moved to Minnesota to live with his mother. (*See id.*) He alleges that a 2019 incident led to his civil commitment in Minnesota, but he claims the commitment process was procedurally flawed, including that he received ineffective assistance from counsel during the proceedings. (*Id.* at 1-3, 14.) He also argues that his present commitment hinges on his conduct in North Dakota, and he contends that using this prior behavior to justify a new commitment in a different state raises legal issues. (*Id.* at 2, 5.) Mr. Smuda also raises claims under the Constitution's Fourth, Sixth, Eighth, and Fourteenth Amendments. (*Id*. at 7-8.) He invokes 42 U.S.C. § 1983 and suggests that he also has causes of action under 42 U.S.C. §§ 1985(3) and 1986, as well as the ADA. (*Id*. at 12-13.)

For relief, Mr. Smuda asks for $20 million in damages, as well as "temporary, preliminary and permanent injunctions enjoining defendants, their officials, employees, co-conspirators, agents, attorneys, and all persons in active concert or participating with anyone of them from enforcing policies, practices or procedures that violate the Fourth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution." (*Id*. at 16.)

After preservice screening under 28 U.S.C. § 1915A(b), the District Court dismissed all of Mr. Smuda's claims and defendants, save for his § 1983 claim against Defendant Nancy Johnston in her official capacity for prospective declaratory and injunctive relief to the extent that his claim is based on allegedly unconstitutional conditions of confinement and inadequate medical care, as well as his claim under Title II of the ADA against Defendants State of Minnesota, MSOP, and Nancy Johnston in her official capacity to the extent that this claim is also based on allegedly unlawful conditions of confinement and inadequate medical care. (Doc. 21 at 7.)

Defendants State of Minnesota, MSOP, and Nancy Johnston in her official capacity now move the Court to dismiss Mr. Smuda's remaining claims under Federal Rule of Civil Procedure 12(b)(1) and (b)(6) for failure to state a claim upon which relief can be granted. (Docs. 39 (Motion) 41, (Memorandum).) Mr. Smuda opposes Defendants' Motion to Dismiss, arguing that Defendants violated his rights under § 1983 and Title II of the ADA. (Doc. 47.)[1]

---

[1] The filing is labeled as a Memorandum in Support of Motion to Keep Monetary, Compensatory, and Punitive Damages Relief, but the filing is substantively responsive to Defendants' arguments regarding Mr. Smuda's § 1983 and Title II ADA claims. (Doc. 47 at 4-9.)

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction to decide an action or particular claims asserted in a complaint. *See* Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions may either challenge the complaint's claim of jurisdiction on its face or attack the underlying factual basis for jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "A facial challenge to subject-matter jurisdiction argues that factual allegations made in a complaint—even if truthful—are insufficient to establish jurisdiction." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1026 (D. Minn. 2015) (citing *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1073 (D. Minn. 2001)). Courts should consider only the pleadings, and nothing more, when analyzing a facial challenge to jurisdiction. *Id.*; *see also Kern v. Gandhi*, 24-cv-348 (KMM/SGE), 2025 WL 1615712, at *3 (D. Minn. June 6, 2025) (noting Rule 12(b)(1) facial attack is akin to Rule 12(b)(6) analysis).

Another of Rule 12's challenges, Rule 12(b)(6), requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Montgomery*, 98 F. Supp. 3d at 1026 (quoting *Iqbal*, 556 U.S. at

4

678). In applying this standard, the Court accepts the factual allegations as true and views them most favorably to Plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

The Court also notes that Mr. Smuda is acting pro se in this matter. When assessing the sufficiency of a complaint by a pro se plaintiff, courts should apply "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Fed R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). "If the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, a *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914). "[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court need not "divine the litigant's intent and create claims that are not clearly raised," nor "read or construct an argument into a civil-rights pleading." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004) (discussing *Nickens v. White*, 536 F.2d 802, 803-04 (8th Cir. 1976)). Courts are also not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 915.

# ANALYSIS

## I. DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED IN PART AND DENIED IN PART.

Defendants argue that Mr. Smuda's Amended Complaint should be dismissed for several reasons. They argue that the MSOP is not a cognizable legal entity subject to suit. They also argue that the State of Minnesota is immune from suit under the Eleventh Amendment. Next, Defendants contend that Mr. Smuda fails to plausibly allege a § 1983 claim. Finally, Defendants contend that Mr. Smuda fails to plausibly allege an ADA violation.

### A. MSOP cannot be sued as a standalone entity.

Defendants are correct to argue that MSOP is not a suable entity and should therefore be dismissed. According to Defendants, "MSOP is a program established and maintained by the Minnesota Department of Human Services [("DHS")]," but MSOP itself "is not a legal entity." (Doc. 41 at 5.) Mr. Smuda asserts that MSOP "is an agency of the Department of Human Services . . . is a 'public entity' within the meaning of Title II of the [ADA] . . . [a]nd subject to suit." (Doc. 47 at 7.)

"A court may dismiss a suit against a defendant if the defendant is not a legal entity capable of being sued." *Sorenson v. Minnesota*, No. 21-cv-671 (NEB/LIB), 2021 WL 6335107, at *3 (D. Minn. Sept. 13, 2021) (citing *Brown v. Fifth Jud. Dist. Drug Task Force*, 255 F.3d 475, 477-78 (8th Cir. 2001)). The MSOP is not a distinct suable entity. *Id*. Rather, the DHS established the MSOP under Minnesota Statute § 246C.13, to "provide specialized sex offender assessment, diagnosis, care, treatment, supervision, and other

6

services to civilly committed sex offenders[.]" Minn. Stat. § 246C.13. Because MSOP is not a distinct legal entity, but a program run by the Minnesota DHS, the Court recommends that MSOP be dismissed.

**B.      Sovereign Immunity.**

In a single paragraph of their motion to dismiss, Defendants argue that the State of Minnesota enjoys Eleventh Amendment immunity from suit. Although Defendants do not specify what claim they are asserting immunity for, the only remaining claim against the State of Minnesota directly is Mr. Smuda's ADA claim. (Doc. 41 at 4.) Mr. Smuda contends in his Response that "Defendant State of Minnesota is a 'public entity' within the meaning of Title II of the [ADA] . . . [a]nd subject to [s]uit[.]" (Doc. 47 at 7.)

"The Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens as well as citizens of another state." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999). But as this Court already recognized, "Title II of the ADA is a valid abrogation of state sovereign immunity with respect to some types of claims." (Doc. 21 at 3.) This abrogation is not unlimited, though; it is (at least as relevant here) constrained to ADA claims based on conduct that actually violates the Fourteenth Amendment. *United States v. Georgia,* 546 U.S. 151, 160 (2006); *see also Sinclair v. Culbeaux*, 25-cv-2365, 2025 WL 2898562, at *3 (D. Minn. Oct. 10, 2025) (noting state's sovereign immunity is abrogated for ADA claims "when the defendant's conduct is unconstitutional"), *appeal filed* 25-3272 (8th Cir. Nov. 13, 2025). When determining whether sovereign immunity bars a Title II ADA claim such as this, courts consider three questions: (1) does the conduct alleged violate Title II of the ADA at all; (2) does the

conduct alleged also violate the Fourteenth Amendment; and (3) if the conduct alleged violates the ADA but not the Fourteenth Amendment, are "the provisions of Title II 'congruent and proportional' to the rights that it seeks to enforce." *Klinger v. Dep't of Rev.*, 455 F.3d 888, 896 (8th Cir. 2006).

Mr. Smuda's Amended Complaint does little to distinguish his ADA claim from his Fourteenth Amendment claim, and the Court—liberally construing his claims as a pro se litigant—discerns none. In other words, the allegations equally allege (or not, as the case may be) an ADA and Fourteenth Amendment violation. As discussed further below, the Court finds some of those allegations sufficient at this early stage to state a claim under the ADA, and those allegations involve conduct that would violate the Fourteenth Amendment. As such, sovereign immunity does not bar Mr. Smuda's ADA claim. Before turning to Mr. Smuda's ADA claim, however, the Court considers whether Mr. Smuda has alleged any viable § 1983 claims.

**C.     Mr. Smuda's § 1983 claim against Defendant Johnston in her official capacity.**

Defendants argue that Mr. Smuda cannot prevail on a § 1983 claim because he does not allege an ongoing violation of federal law and fails to seek prospective injunctive relief. But, say Defendants, to the extent that Mr. Smuda does allege an ongoing federal law violation, he fails to plausibly suggest that Defendants deliberately disregarded a serious medical need, so his claim still requires dismissal.

Briefly, the Court recounts Mr. Smuda's allegations. In his Amended Complaint, Mr. Smuda alleges that he is a sexually dangerous person who is civilly committed to the MSOP. (Doc. 5 ¶ 4.) He alleges that the Social Security Administration denied him benefits

8

under the mistaken belief that he is a prisoner. (*Id*. ¶ 16.) Mr. Smuda claims that when he stopped taking his medication, MSOP staff transferred him to the High Security Area ("HSA").[2] (*Id*.) He claims MSOP staff pepper sprayed him, searched him, and gave him the wrong medication on one occasion. (*Id*.) Mr. Smuda alleges that MSOP staff watched him for a few days when he had human waste on him, his clothes, and on the floor. (*Id*.) According to Mr. Smuda, MSOP staff searched him, his room, and took some of his belongings, including a continuous positive airway pressure ("CPAP") machine. (*Id*. ¶¶ 16, 50.) Mr. Smuda alleges that his insurance would not provide him with a new CPAP machine until October 2025.[3] (*Id*. ¶ 16.) He alleges that he stops breathing 184 times an hour in his sleep. (*Id*. ¶ 50.) He also alleges that Defendant Johnston is the executive director of MSOP and that she is responsible for the "care, custody, and control" of sexually dangerous persons, and that that she promulgates and enforces certain policies, practices, and procedures. (*Id*. ¶ 18.)

"[U]nder the exception established in *Ex parte Young*,[4] a private party may sue state officials in their official capacities for prospective injunctive relief." *Smith v. Reynolds*, 139 F.4th 631, 635 (8th Cir. 2025) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (further citation omitted). The *Ex parte Young* exception permits suit in cases where "a violation of federal law by a state official is ongoing as opposed to

---

[2] Mr. Smuda calls this area the High Security Administrations (Doc. 5 ¶ 16) but Defendants refer to it the High Security Area. For ease of reference the Court uses Defendants' nomenclature.
[3] There is no information in the record about whether Mr. Smuda now has another CPAP machine.
[4]*Ex parte Young*, 209 U.S. 123, 28 (1908)).

cases in which federal law has been violated at one time or over a period of time in the past." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)). But the exception does not apply to "reformulated request[s] for retrospective relief." *EEE Mins., LLC v. N. Dakota*, 81 F.4th 809, 816 (8th Cir. 2023). In determining whether the *Ex parte Young* doctrine exempts a complaint from Eleventh Amendment immunity, the Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Smith*, F.4th 631 at 635 (quoting *Verizon*, 535 U.S. at 645).

Very little in Mr. Smuda's Amended Complaint would suggest an ongoing violation of federal law or the need for prospective relief. Mr. Smuda alleges that he quit taking his medication and MSOP staff transferred him to the HSA. (Doc. 5 ¶ 16.) He claims MSOP staff "took him there on several occasions" and "[e]ach time they strip[] searched him, and kept him locked up for two weeks at a time, even one time on the wrong meds." (*Id.*) Mr. Smuda also alleges that MSOP staff "watched him for a few days with feces and urine all over him" and the facility. (*Id.*) But Mr. Smuda fails to allege any facts showing that he is currently in the HSA, or that any alleged violation is ongoing. Rather, the only facts Mr. Smuda alleges show that any alleged wrongdoing occurred sometime in the past. As a result, these conditions of confinement claims fall outside of *Ex parte Young*'s exception to the Eleventh Amendment's bar against private parties suing state officials in their official capacities. The Court therefore recommends that these components of Mr. Smuda's § 1983 claim be dismissed with prejudice.

As discussed further below, Mr. Smuda does sufficiently allege conduct that would support a claim under the ADA, but those same allegations do not support a separate § 1983 claim. *Wong v. Minnesota Dep't Hum. Servs.*, 820 F.3d 922, 936 (8th Cir. 2016) (noting that the "comprehensive enforcement mechanisms" of the ADA suggests Congress did not intend for ADA violations to be independently cognizable under § 1983 (quotation omitted); *see also Alsbrook*, 184 F.3d at 1011. Mr. Smuda does nothing to convince the Court that his circumstances support a deviation from the general bar to parallel § 1983 and ADA claims, and it is unclear how he could maintain both.[5] *See, e.g.*, *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 635 (8th Cir. 2014) (noting that Title II of the ADA abrogates Eleventh Amendment immunity "for conduct that actually violates the Fourteenth Amendment"). As it relates to prospective relief, Mr. Smuda's only assertion of ongoing damages relates to the missing CPAP machine (which may well have been replaced by this writing). He can seek relief for this conduct under Title II of the ADA. *See Randolph v. Rodgers*, 253 F.3d 342, 346-48 (8th Cir. 2001). Accordingly, the Court recommends dismissing Mr. Smuda's § 1983 claim in its entirety.

**D.   Mr. Smuda plausibly alleges a cognizable ADA violation.**

The Court now turns to Mr. Smuda's claim under Title II of the ADA. Defendants argue that this claim too should be dismissed because Mr. Smuda fails to allege an ADA violation. The ADA prohibits any "individual with a disability . . . by reason of such

---

[5] In the Court's prior Order, it forecast to Mr. Smuda that his § 1983 claim may be susceptible to dismissal if based on the same conduct as his ADA claim. (Doc. 21 at 4-5 n.4.)

11

disability" from being "excluded from participation in" or being "denied the benefits of the services, programs, or activities of a public entity" or being "subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim for relief under the ADA, Mr. Smuda must allege that "1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999); *Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 983 (8th Cir. 2013).

At this early stage, the Court concludes that Mr. Smuda has alleged enough to state a claim against the State of Minnesota and Ms. Johnston in her official capacity (which, in this instance, is just another way of suing the state directly). Mr. Smuda alleges that MSOP staff took his CPAP machine and that he "stops breathing 184 times an hour in his sleep." (Doc. 5 ¶¶ 16, 50.) In responding to Defendants' motion to dismiss, Mr. Smuda submitted his own affidavit[6] stating, "I have a Severe Medical need for a [CPAP] Machine," and "cannot get a good night without [choking], gasping for air." (Doc. 48 at 1.) More persuasively, Mr. Smuda included an MSOP Client Medical Request Form with an attached Sleep Study Report. (*See* Doc. 50.) This report indicates that Mr. Smuda suffered

---

[6] Defendants assert that this Court cannot consider materials submitted by Mr. Smuda because they are not embraced by the Amended Complaint. (Doc. 52 at 5 n.5.) The Court disagrees. Mr. Smuda's medical need for a CPAP machine is at the heart of his ADA claim, and these documents speak directly to that issue. *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (matters embraced by the pleadings or integral to the claim may be considered without converting Rule 12 motion to one for summary judgment); *accord Blackwell v. Ramsey County Corr. Facility*, 24-cv-906 (PAM/DJF), 2024 WL 3224766, at *6 (D. Minn. May 21, 2024) (considering medical records in Rule 12 matter). Defendants' contention that considering these documents would convert the case to one for summary judgment is incorrect.

from "very severe sleep disordered breathing" that lead to "severe oxygen desaturation." (*Id.* at 2.) He was diagnosed with "very severe, non-positional obstructive sleep apnea," with a CPAP machine as the "initial treatment choice" (followed by supplemental oxygen if the CPAP machine was ineffective). (*Id.* at 2.) And it was clear that MSOP knew about Mr. Smuda's serious medical condition and need for a CPAP, since the report itself was submitted to, and in the records of, MSOP. (*Id.* at 1-2.)

Viewing this evidence and set of allegations in Mr. Smuda's favor, he qualifies as a person with a disability, as he suffers from non-positional obstructive sleep apnea. He is also qualified for the benefit in question (that is, the right to remedial CPAP intervention). *Accord Walton v. Dawson*, 752 F.3d 1109, 1120 (8th Cir. 2014) ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment.") (quoting *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013)). And he was denied that benefit by Defendants' failure to replace Mr. Smuda's CPAP machine after MSOP personnel took it away from him. (Doc. 5 ¶ 16.)

This brings the Court back to the question of sovereign immunity. The claim for relief Mr. Smuda makes under the ADA is one for which there is a valid abrogation of Eleventh Amendment immunity, based on deliberate indifference to his serious medical need for a CPAP machine. The "deliberate indifference" standard applies to claims of inadequate medical care by civilly committed individuals. *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021). To adequately plead a deliberate indifference claim necessary to establish a violation, a plaintiff must "demonstrate (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need."

13

*Stevens v. Roy*, No. 16-cv-3807 (JRT/LIB), 2017 WL 8944013, at *15 (D. Minn. June 8, 2017) (citing *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)), *R. & R. adopted*, 2017 WL 4156999 (D. Minn. Sept. 19, 2017). Mr. Smuda must allege facts demonstrating "more than negligence, more even than gross negligence . . . ." *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). He must show both, that officials had actual knowledge that [his] medical condition created a substantial risk of serious harm to [his] health" and that officials "failed to act reasonably to abate that risk." *Baez v. Rosemack*, No. 9-cv-2121 (RHK/LIB), 2011 WL 4062586, at *4 (D. Minn. Aug. 9, 2011) (citing *Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997)).

On this front, similar allegations to Mr. Smuda's have been found sufficient to state a claim for relief based on a deliberate indifference theory. *See Meloy v. Schuetzle*, 230 F.3d 1363 (Table), 2000 WL 1160446, at *1-2 (8th Cir. 2000). In *Meloy*, the Court had medical records documenting the need for a CPAP, and that the need for a CPAP was so obvious that other prison personnel became concerned and tried to get relief for Mr. Meloy. *Id.* Beyond that, the defendants were trained medical professionals, who "might have been expected to appreciate the significance of a CPAP to Meloy's health." *Id.* Mr. Smuda's claim has no materially distinguishing features. He has submitted medical records showing the need for a CPAP. (Doc. 50.) MSOP officials knew of the record, evident from the MSOP stamp stating "Submit to Record" on the Sleep Study Report. (*Id.*) And the record was readily available, given that MSOP Health Services provided Mr. Smuda with a copy of the Sleep Study Report on the same day he requested it—July 1, 2025. (*Id.*) In

14

constitutional parlance, there is evidence that he had an objectively serious medical need, which prison officials knew of and deliberately disregarded.

Because the contours of Mr. Smuda's ADA claim align with the Fourteenth Amendment, Defendants cannot prevail based on the assertion of Eleventh Amendment sovereign immunity. The Court therefore recommends that Defendants' Motion to Dismiss (Doc. 39) be denied as to Mr. Smuda's ADA claims against the State of Minnesota and Ms. Johnston in her official capacity.

## II. MR. SMUDA'S REMAINING MOTIONS.

The Court finally turns to Mr. Smuda's pending motions. Mr. Smuda has filed a Motion for Compensatory Relief (Doc. 30); Motion to Keep Monetary, Compensatory and Punitive Damages Relief (Doc. 35); and a Motion for Default Judgment (Doc. 53).

As best the Court can tell, Mr. Smuda's first two motions are essentially the same: he asserts that he has been damaged, and is seeking to collect monetary compensation for that damage. (Docs. 30, 35.) But Defendants did not move to dismiss based on a theory of failure to state a claim for compensatory damages. *Compare Kern*, 2025 WL 1615712, at *6-7 (determining viability of ADA compensatory damages claims where defendants sought dismissal to the extent those claims requested such relief). Defendants were clearly on notice that Mr. Smuda was seeking compensatory damages, since he asked for $20 million in his Amended Complaint. (Doc. 5 at 16 ¶ 6.) Thus, Mr. Smuda is essentially asking the Court to confirm he can proceed with compensatory damages claims when no Defendant has affirmatively challenged those claims (save for responding to his motions, *see* Docs. 33, 36). Because the matter is not properly before the Court, Mr. Smuda's Motion

15

for Compensatory Relief (Doc. 30) and Motion to Keep Monetary, Compensatory, and Punitive Damages Relief (Doc. 35) are denied without prejudice. Following discovery, the Court will be in a better position to determine what, if any, damages are available to Mr. Smuda. *Accord Kern*, 2025 WL 1615712, at *7 (permitting committed person's ADA claim for compensatory damages to proceed to discovery to establish clear record on whether evidence supported compensatory relief).

As for Mr. Smuda's Motion for Default Judgment, it is based on Mr. Smuda's perception that Defendants did not timely file a reply brief in support of their motion to dismiss. (Doc. 53.) According to Mr. Smuda, this failure supports default. But Mr. Smuda is wrong on the facts and the law. Mr. Smuda responded to Defendants' motion to dismiss on July 7, 2025. (Doc. 47.) Defendants' reply was due 14 days later. (Doc. 46.) It was filed July 17, 2025. (Doc. 52.) In other words, Defendants' reply was timely. But even if it were untimely or never filed, that would not support default since a reply brief is optional. *See* D. Minn. LR 7.1(c)(3). This motion is therefore denied with prejudice.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Defendants' State of Minnesota, Minnesota Sex Offender Program, and Nancy Johnston's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 39) be **GRANTED IN PART AND DENIED IN PART** as follows;

    a. Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 claim against Defendant Nancy Johnston in her official capacity for prospective declaratory and injunctive relief based on allegedly unconstitutional conditions of confinement is **GRANTED**; and

16

      b.      Defendants' Motion to Dismiss Plaintiff's claim under Title II of the ADA is **GRANTED** as to Defendant MSOP but **DENIED** as to Defendants State of Minnesota and Nancy Johnston in her official capacity.

## ORDER

Accordingly, based on all the files, records, and proceedings in this case, **IT IS ORDERED** that:

1. Mr. Smuda's Motion for Compensatory Relief (Doc. 30); Motion to Keep Monetary, Compensatory and Punitive Damages Relief (Doc. 35) are **DENIED WITHOUT PREJUDICE**; and

2. Mr. Smuda's Motion for Default Judgment (Doc. 53) is **DENIED WITH PREJUDICE**.

Date: January 27, 2026

          *s/Douglas L. Micko*
          DOUGLAS L. MICKO
          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).